IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AUDRA HARTMAN, individually, <br> and as the Personal Representative of the <br> Estate of Timothy Alan Hartman, deceased, and <br> MONIKA C. SANDOVAL, individually, <br> and as the Personal Representative of the <br> Estate of Rickie D. Sandoval, deceased, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br> ROBINSON AVIATION (RVA), INC., <br> a Foreign Corporation, OKLAHOMA CITY <br> AIRPORT TRUST, a Public Trust, and <br> THE CITY OF OKLAHOMA CITY, OKLAHOMA, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     Case No. CIV-10-197-L <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## O R D E R

On March 4, 2008, after departing the Wiley Post Airport ("Wiley Post" or

"PWA") in Bethany, Oklahoma, a Cessna Citation jet aircraft bearing FAA

registration number N113SH crashed after a collision with one or more American

White Pelicans near the southeast end of Lake Overholser in Oklahoma City,

Oklahoma.  The aircraft struck the subject bird(s) approximately 4 miles from Wiley

Post at an altitude of 1700 feet Above Ground Level (AGL); 3,000 feet Mean Sea

Level (MSL).  The crash fatally injured the pilot-in-command Timothy Hartman,

sitting in the left front seat, and Rickie Sandoval, who was sitting in the right front

seat.  The aircraft had three passengers, who also lost their lives in the crash.

Plaintiffs Audra Hartman and Monika C. Sandoval, as Personal Representatives of the Hartman and Sandoval Estates ("plaintiffs"), are pursuing wrongful death damages for the Estates and survivors.  The three passengers' estates are not involved in this action.  *See* Doc. No. 196, Final Pretrial Report, Brief Preliminary Statement.

This matter is before the court on the Oklahoma City Airport Trust's and the City of Oklahoma City's Motion for Summary Judgment **[Doc. No. 130]**.[1]  The court has carefully reviewed the briefs and exhibits submitted by the parties as well as the response, reply briefs and supplemental materials that were filed.

Summary judgment is appropriate when the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a) ("[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  Substantive law determines which facts

---

[1]     Plaintiffs Audra Hartman, individually, and as the Personal Representative of the Estate of Timothy Alan Hartman, deceased, and Monika C. Sandoval, individually, and as the Personal Representative of the Estate of Rickie D. Sandoval, deceased, are referred to in this order as "plaintiffs." Defendants Oklahoma City Airport Trust, a Public Trust ("OCAT") and The City of Oklahoma City, Oklahoma ("OKC") are referred to collectively in this order as "defendants."  Defendant United States of America's "Motion for Summary Judgment or, in the Alternative, Motion to Dismiss" [Doc. No. 139], which relates to plaintiffs' claims based on actions of the Federal Aviation Administration ("FAA"), will be addressed in a separate order.  Plaintiffs' claims against Robinson Aviation (RVA), Inc. need not be addressed in light of the Notice of Settlement by Plaintiffs and Defendant RVA and Withdrawal of Motions filed December 5, 2012 [Doc. No. 149].

are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The

dispute must be genuine, that is, "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Id.

The party opposing summary judgment may not rest upon the mere

allegations or denials of the party's pleadings, but must set forth specific facts

showing that there is a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(e)(3) ("If a

party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c), the court may . . . grant

summary judgment if the motion and supporting materials  – including the facts

considered undisputed – show that the movant is entitled to it[.]").  The mere

possibility that a factual dispute may exist, without more, is not sufficient to

overcome a convincing presentation by the moving party.  Allegations alone will not

defeat summary judgment.  Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526,

530 (10th Cir. 1994).  Any doubt as to the existence of a genuine issue of material

fact must be resolved against the party seeking summary judgment.  In addition, the

inferences drawn from the facts presented must be construed in the light most

favorable to the nonmoving party.  Board of Education v. Pico, 457 U.S. 853, 863

(1982).

In a response to a motion for summary judgment, a party cannot rest on

ignorance of facts, on speculation, or on suspicion and may not escape summary

judgment in the mere hope that something will turn up at trial.  Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988).  The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.  Allegations alone will not defeat summary judgment.  Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

The court's local rule governing summary judgment procedure, LCvR56.1, provides in subpart (c) that:

> The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist.  Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's facts that is disputed.  All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party.

Plaintiffs claims are based on negligence.  Under Oklahoma law, the three essential elements of a claim of negligence are (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach.  Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 620 (10th Cir. 1998), *quoting* Lockhart v. Loosen, 943 P. 2d 1074, 1079 (Okla. 1997).  An event's proximate cause is that "which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred."  Johnson

v. Mid-South Sports, Inc., 806 P. 2d 1107, 1109 (Okla. 1991) (citation omitted).

Although causation is generally a question of fact, "the question becomes an issue

of law when there is no evidence from which a jury could reasonably find the

required proximate, causal nexus between the careless act and the resulting

injuries." Gaines-Tabb, Inc., 160 F.3d at 620, *citing* Henry v. Merck and Co., 877

F.2d 1489, 1495 (10th Cir. 1989).  Where the evidence together with all the

inferences which may be properly deduced therefrom is insufficient to show a

causal connection between the alleged wrong and the injury, the issue of proximate

cause becomes a question of law.  Lockhart, 943 P. 2d at 1080 (citation omitted).

When the matter is one of pure speculation or conjecture or the probabilities equally

balanced, judgment as a matter of law is proper.  Hardy v. Southwestern Bell Tel.

Co., 910 P. 2d 1024, 1027 (Okla. 1996).   Speculation is the antithesis of proximate

cause.  Butler v. Oklahoma City Public School System, 871 P. 2d 444, 446 (Okla.

Ct. Civ. App. 1994).

Under Oklahoma law, proximate cause consists of two elements: cause in

fact and legal causation.  Worsham v. Nix, 145 P. 3d 1055, 1066 n. 9 (Okla. 2006)

(citation omitted).  Cause in fact deals with the "but for" consequences of an act; the

defendant's conduct is a cause of the event if the event would not have occurred but

for that conduct.  Id.  Legal causation, on the other hand, concerns a determination

whether legal liability should be imposed as a matter of law where cause in fact is

established and depends upon considerations of common sense and policy. Id.  A

finding of proximate cause must be based on something more substantial than mere speculation and conjecture.  Id. at 1065 (citation omitted).

Defendants have submitted the following Statement of Undisputed Facts (citations to the record are omitted), which are essentially undisputed by plaintiffs:[2]

1.  Wiley Post is a GA airport, not a Part 139 certified airport. (Deemed admitted by the court for the reasons discussed below.)

2.  Part 139 of the Federal Aviation Regulations ("FARs") regulates airports certified by the FAA.  Airports require Part 139 certification when they serve scheduled and unscheduled air carrier aircraft with more than 30 seats and serve scheduled air carrier operations in aircraft with more than 9 seats but less than 31 seats.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

3.  Civilian airports that do not serve scheduled passenger service are known as General Aviation ("GA") airports.  Such airports serve private and business operated aircraft as well as small aircraft charter operations.  GA airports are not certificated by the FAA.  (Not specifically controverted by plaintiffs' Statement of

_____

[2]      The court has noted in parentheses the factual statements which have clearly not been controverted by plaintiffs' Statement of Material Facts in Dispute and are therefore deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c) (paragraphs 2, 3, 4, 5, 6, 7, 8, 11, 17, 18, 19, 21, 22, 24, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 & 37).  However, as noted at length in this order, even plaintiffs' apparent attempt to dispute the other facts is insufficient to preclude summary judgment as a matter of law.  These paragraphs are noted parenthetically as "Deemed admitted by the court for the reasons discussed below" (paragraphs 1, 9, 10, 12, 13, 14, 15, 16, 20, 23, 25, 26 & 38).

Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

4.   OKC owns and operates OKC's three airports, including Wiley Post and Will Rogers World Airport ("WRWA").  OKC has a lease with OCAT.  OCAT is assigned the functions of management, operations and maintenance of the three airports for, and on behalf of, OKC.  OKC has no control over the operations of Wiley Post.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

5.   Defendants do not have the discretion to select or designate air traffic matters, such as departure or arrival routes for the aircraft coming into or out of Wiley Post, this discretion is exclusive to the FAA.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

6.   FAA Grant Agreements are contractual agreements between the FAA and an airport (GA or Part 139) to provide and fund certain improvements at the recipient airport.  Grant Agreements may contractually require the recipient airport to comply with "Grant Assurances," which are expressly delineated in the Grant Agreement.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

7.  Grants from the FAA under the Airport Improvement Program ("AIP") do not impose any Part 139 requirements on the operators of GA airports.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

8.  Wiley Post received AIP funding for runway and lighting improvement, and not for wildlife mitigation.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

9.  Grant Agreements may contractually require the recipient facility to utilize an FAA Advisory Circular ("AC") expressly delineated in the Grant Agreement.  (Deemed admitted by the court for the reasons discussed below.)

10.  ACs are "advisory" only.  ACs provide guidance such as methods, procedures, and practices acceptable to the FAA for complying with regulations and grant requirements.  ACs may also contain explanations of regulations, other guidance material, best practices, or information useful to the aviation community.  They do not create or change a regulatory requirement.  An AC may reflect or restate ways to implement regulatory requirements otherwise established by statute, regulation or grant agreements, but, by FAA order, an AC itself may not impose requirements or prohibitions.  (Deemed admitted by the court for the reasons discussed below.)

11.  When a Grant Assurance refers to "the project," that assurance does not

thereby apply any and all ACs to the airport as a whole.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

12.  AC 150/5200-33B defines the separation distances that airports should maintain from wildlife attractants.  Pursuant to this AC, the FAA recommends that Part 139 airports maintain a separation distance of 10,000 feet from wildlife attractants, known as the "critical zone."  (Deemed admitted by the court for the reasons discussed below.)

13.  AC 150/5200-33B was not expressly enumerated in any Grant Assurance to Wiley Post.  (Deemed admitted by the court for the reasons discussed below.)

14.  AC 150/5200-33B does not apply to GA airports, including Wiley Post, because such airports are not Part 139 airports.  (Deemed admitted by the court for the reasons discussed below.)

15.  AC 150/5200-33B was not interpreted by the FAA to impose any Part 139 regulatory requirement on GA airports, such as Wiley Post, that are obligated under federal grant agreements, but are not certified under Part 139.  (Deemed admitted by the court for the reasons discussed below.)

16.  AC 150/5200-33B was never interpreted by the FAA to require a GA airport that had received federal grant-in-aid to create a Wildlife Hazard Assessment ("WHA") or a Wildlife Hazard Management Plan ("WHMP").  (Deemed admitted by the court for the reasons discussed below.)

17.  In certain circumstances or after certain events, the FAA requires that Part 139 certificated airports implement wildlife hazard management programs, including WHAs of the critical zone and, if deemed appropriate by the FAA, WHMPs.  Will Rogers World Airport ("WRWA") is such an air carrier serviced airport.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

18.  FARs requiring WHA and WHMP do not apply to GA airports.  WHAs are required only at Part 139 airports.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

19.  There is no triggering regulation or statutory requirement to do a WHA outside of Part 139 or at a GA airport.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

20.  Because WRWA is a Part 139 airport, OKC contracted with the USDA to perform a WHA pursuant to 14 C.F.R. § 139.337.  This 1998 WHA covered the geographical area near Lake Overholser where the subject aircraft struck the bird(s).  (Deemed admitted by the court for the reasons discussed below.)

21.  The United States Department of Agriculture ("USDA") employees who conduct WHAs are employees of the USDA, not employees of OCAT.  The USDA

was an independent contractor of OCAT.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

22.  OCAT entered into a contract work plan with the USDA, which expressly included Wiley Post and employed an FAA-qualified wildlife biologist.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

23.  No mitigation or bird abatement was recommended nor required in the Wildlife Damage Management ("WDM") plan for Lake Overholser.  (Deemed admitted by the court for the reasons discussed below.)

24.  There is no evidence that Wiley Post was in violation of any Grant Assurances by not implementing a WHA or WHMP.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

25.  At no time did USDA personnel ever have any report that American white pelicans were at or over WRWA or Wiley Post, nor did USDA ever see American white pelicans at either airport.  (Deemed admitted by the court for the reasons discussed below.)

26.  There are no identified hazards at Wiley Post related to bird activity.  Any bird activity at Lake Overholser was not deemed a hazard to aircraft normally departing from Wiley Post.  (Deemed admitted by the court for the reasons

discussed below.)

27.  Other than the March 4, 2008 bird strike, there was no history of any reported strikes with American white pelicans at either Wiley Post or WRWA, or even within the State of Oklahoma.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

28.  There is no known nexus between the bird(s) that struck the aircraft and Lake Overholser.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

29.  American white pelicans are migratory birds with a vast geographical range spanning thousands of miles and can weigh as much as twenty pounds and have a wingspan of up to nine feet.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

30.  The Oklahoma City area is in the "central flyway zone," a regulatory migratory bird path between Canada and Mexico.  American white pelicans are migratory birds which do not nest year round at Lake Overholser.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

31.  There is no way to completely remove any and all birds from the sky in

the central flyway at or near Wiley Post.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

32.  Bird strikes cannot be eradicated.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

33.  Any bird can be a threat to an aircraft.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

34.  No technique used for bird removal or abatement would have been effective for removing a large bird, such as an American white pelican at 1,500 feet above ground level.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

35.  Nothing could be done at Lake Overholser to "get rid of birds"; if you removed them, more would return.  (Not specifically controverted by plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for purposes of summary judgment pursuant to LCvR56.1(c).)

36.  An Airport Facility Directory ("A/FD") is an FAA-issued manual or directory for pilots that provides comprehensive information on airports and other aviation facilities and procedures.  It can list hazards at or around an airport of a

native or fixed nature.  (Not specifically controverted by plaintiffs' Statement of

Material Facts in Dispute, thus deemed admitted for purposes of summary judgment

pursuant to LCvR56.1(c).)

37.  A Notice to Airmen ("NOTAM") is a special alert disseminated by a

number of entities to aircraft pilots to inform them of any more immediate or short

term and temporary hazards at a specific location.  Pilots are required by

regulations to inform themselves of the information set forth in these two

publications as part of their pre-flight duties.  (Not specifically controverted by

plaintiffs' Statement of Material Facts in Dispute, thus deemed admitted for

purposes of summary judgment pursuant to LCvR56.1(c).)

38.  Defendants expressly warned pilots regarding wildlife hazards in the area

through a properly phrased NOTAM, which was incorporated into its 2008 A/FD.

This NOTAM expressly communicated and warned that there are flocks of birds on

and in the vicinity of Wiley Post in all quadrants.  (Deemed admitted by the court for

the reasons discussed below.)

While plaintiffs have superficially attempted to dispute the factual statements

contained in paragraphs 1, 9, 10, 12-16, 20, 23, 25, 26 and 38, for the reasons

discussed more fully below, the court finds that plaintiffs' responses to these

paragraphs are actually in the nature of argument, and fail to raise a genuine issue

of material fact requiring a jury trial in this matter.  Rather than beginning their

opposition brief with a section which contains a "concise statement of material facts

to which the party asserts genuine issues of fact exist[,]" as required by LCvR56.1(c), plaintiffs so-called "Statement of Material Facts in Dispute" actually consists of a listing of 8 topics (*i.e.*, "AC's Inclusion in Grant," "AC's Application," "Critical Zone," "1998 WHA," "WRWA's WHMP," "Pelicans," "NOTAMS" and "PWA's Status") for which they provide their own, argumentative response.  Also, plaintiffs' "Statement of Material Facts in Dispute" fails on several points to "refer with particularity to those portions of the record" upon which they rely, in violation of LCvR56.1(c).[3]  Sometimes plaintiffs merely reference a paragraph in defendant's statement of undisputed facts in their own "Statement of Material Facts in Dispute" without actually disputing that particular fact; however, out of an abundance of caution, the court has carefully reviewed plaintiffs' response concerning these paragraphs and finds there is no genuine dispute requiring a jury trial.  In some instances, the plaintiffs' citation to the record does not actually support their own factual assertions appearing in their "Statement of Material Facts in Dispute."  The insufficiency of plaintiffs' summary judgment response is particularly apparent when the court considers the overwhelming legal significance of the factual statements submitted by defendants that were not specifically disputed by the plaintiffs, and thus deemed admitted.

Paragraph 1 of plaintiffs' "Statement of Material Facts in Dispute" is entitled

---

[3]    *See also* LCvR7.1(j) ("Factual statements or documents appearing only in briefs shall not be deemed to be a part of the record in the case, unless specifically permitted by the Court.")

"AC's Inclusion in Grant" and states that "Grant Assurance [sic] contractually require recipients to follow certain FAA Advisory Circulars (AC)."  The citation for this statement is paragraph 9 of defendants' Statement of Undisputed Facts, which states that "Grant Agreements may contractually require the recipient facility to utilize an FAA Advisory Circular (AC) expressly delineated in the Grant Agreement." Plaintiffs' version omits the word "may" but otherwise does not specifically controvert defendants' paragraph 9 and, as shown, does not identify any portion of the record in support.  Therefore, the court finds that defendants' paragraph 9 should be considered deemed admitted for purposes of summary judgment.  Next, plaintiffs argue that it is "misleading" for defendants to suggest that AC150/5200-33B is irrelevant and "not expressly enumerated in any Grant Assurance to PWA." Again, plaintiffs cite to defendants' own Statement of Undisputed Facts, ¶ 13, which states that "AC 150/5200-33B was not expressly enumerated in any Grant Assurance to [Wiley Post]."  The court finds that plaintiffs' argument is insufficient to controvert defendants' paragraph 13 and it is therefore deemed admitted that AC 150/5200-33B was not expressly enumerated in any Grant Assurance to Wiley Post. Plaintiffs next assert that AC150/5200-33A *was* clearly delineated in the Grant table, but of course, even if true, this statement would not serve to contradict defendants' paragraph 13 which related to AC150/5200-33B.  Finally, plaintiffs state that the "nearly identical 'B' version was published on August 28, 2007[,]" but this bare statement lacks a citation to the record and also fails to controvert defendants'

paragraph 13.  Therefore, the court finds that defendants' paragraph 13 should be considered deemed admitted for purposes of summary judgment.

Paragraph 2 of plaintiffs' "Statement of Material Facts in Dispute" is entitled "AC's Application."   Upon review of this paragraph, it appears that plaintiffs merely make bare reference to paragraphs 10 and 12-16 of defendants' Statement of Undisputed Facts.  The court finds that paragraph 2 of plaintiffs' Statement of Material Facts in Dispute should be considered as argument, and is not sufficient to specifically controvert defendants' facts in paragraphs 10 and 12-16.  The question of whether the ACs created a duty owed by defendants to plaintiffs would undisputedly be a question of law for the court.

For similar reasons, the court finds that the arguments in paragraph 3 of plaintiffs' "Statement of Material Facts in Dispute" entitled "Critical Zone" also fail to specifically controvert the facts contained in paragraphs 12 through 16 of defendants' Statement of Undisputed Facts.

Paragraph 4 of plaintiffs' "Statement of Material Facts in Dispute" is entitled "1998 WHA" and apparently purports to controvert the sentence in paragraph 20 of defendants' Statement of Undisputed Facts stating that the "1998 WHA covered the geographical area near Lake Overholser where the subject aircraft struck the bird(s)."  Plaintiffs state that "Lake Overholser is outside of WRWA's critical zone and the 1998 study's inclusion of the lake was only due to its large population."  Clearly, this sentence does not controvert paragraph 20, and in fact acknowledges

17

that Lake Overholser was included in the 1998 study.  The court finds that defendants' paragraph 20 should be considered deemed admitted for purposes of summary judgment.

Upon review of paragraph 5 of plaintiffs' "Statement of Material Facts in Dispute" entitled "WRWA's WHMP," the court notes that plaintiffs' response is argumentative and states that paragraph 23 of defendants' Statement of Undisputed Facts is "misleading."  Of course, this response also fails to specifically controvert the statement of material facts of the opposing party as required by LCvR56.1(c). Therefore, it is appropriate for the court to deem defendants' paragraph 23 as undisputed for purposes of summary judgment.

Paragraph 6 of plaintiffs' "Statement of Material Facts in Dispute" is entitled "Pelicans" and purports to dispute paragraph 25 of defendants' Statement of Undisputed Facts.  Citing "Defense Exhibit J, Deposition of OCAT Biologist, Karen Duncan, 30:7-20," plaintiffs state that "USDA biologists confirmed sightings of American White Pelicans at Lake Overholser both before the crash and 1998 and after the crash."  The court has reviewed page 30, lines 7 through 20 of Ms. Duncan's deposition.  This deposition excerpt states in its entirety:

A.[4] Yeah, I was aware that there were birds at the lake.

Q.  Did you ever personally observe white – observe white pelicans there?

_____

[4]        The question to which this answer applies has not been included by plaintiffs in the excerpt cited.

A.  At what point?

Q.  In 2008.

A.  No.

Q.  Did you ever do a study of Lake Overholser in the month of – you know, February to April timeframe?

A.  Yes, I have.

Q.  Did you ever observe white pelicans?

A.  Yes.

The court fails to see how this excerpt from Ms. Duncan's deposition supports plaintiffs' statement that biologists (plural) confirmed sightings at Lake Overholser both before the crash and after the crash.  Other than 2008, no other dates are given in the excerpt.  And, of course, sightings of pelicans at the Lake do not serve to controvert defendants' original statement that at no time did USDA personnel ever have any report that American White Pelicans were at or over  Will Rogers World Airport or Wiley Post, nor did USDA ever see American White Pelicans at either airport.  Lake Overholser is not an airport.  The last sentence of plaintiffs' "Pelicans" paragraph states, "As shown below, the biologist's travels to [Wiley Post] were rare."  No citation to the record is given.  The court finds that defendants' paragraph 25 should be considered deemed admitted for purposes of summary judgment because plaintiffs' "response" is insufficient to controvert this fact under LCvR56.1(c).

Paragraph 7 of plaintiffs' "Statement of Material Facts in Dispute" is entitled "NOTAMS."  In this paragraph, plaintiffs present their argument for the type of warnings they wish had been given by defendants.  Plaintiffs' response is argumentative and clearly is not a proper refutation of paragraph 26 of defendants' Statement of Undisputed Facts, which is supported by evidence in the record, and which clearly pertains to hazards to aircraft departing from Wiley Post related to bird activity, not NOTAMS.

The eighth and final paragraph of plaintiffs' "Statement of Material Facts in Dispute" says that "Though [Wiley Post] is a non-certified and a 'general aviation airport,' it is also properly characterized as a 'public-use' and 'federally obligated,' airport."  This response is easily disposed of since it cites to no part of the record and does not actually controvert paragraph 1 of defendants' Statement of Undisputed Facts which provides that Wiley Post is a GA airport, not a Part 139 certified airport.

Plaintiffs' pattern of addressing facts with argument, combined with their continual failure to adhere to the court's rules of practice concerning summary judgment procedure has needlessly complicated the court's consideration of their response.   However, after noting the facts that have not been specifically controverted, and after painstakingly reviewing plaintiffs' unsuccessful attempts to raise genuine issues of fact with respect to the remaining factual paragraphs discussed above, the court concludes that for purposes of summary judgment,

plaintiffs have failed to controvert defendants' Statement of Undisputed Facts, and therefore, the facts contained in defendants' paragraphs 1 through 38 are deemed admitted.

In view of these undisputed facts, it is clear that the lack of any evidence of proximate causation is dispositive of plaintiffs' negligence claim.  Defendants have persuasively demonstrated this in their brief.  There are no facts or evidence to show that the subject aircraft's strike with the American white pelican(s) would not have occurred "but for" defendants' alleged failure to implement a wildlife mitigation program at Lake Overholser.  Based upon the undisputed facts in this case, the airplane strike could have occurred regardless of attempts to assess and/or mitigate hazards presented by American white pelicans at Lake Overholser.  The court agrees with defendants that a finding to the contrary would be mere speculation and conjecture.  Plaintiffs' speculative allegation that the particular bird or birds involved in the strike came from Lake Overholser is an unsupported and unsupportable allegation.  American white pelicans are migratory birds with a vast geographical range spanning thousands of miles.  There is no evidence that the American white pelican(s) involved in the airplane strike have any nexus with Lake Overholser. Plaintiffs have completely failed to come forward with any evidence in the record to demonstrate that the defendants could have prevented this particular bird strike.  As stated by defendants, there is no evidence that a wildlife hazard assessment or mitigation technique could have prevented birds from flying at that specific latitude,

longitude and altitude in the flight path of the subject aircraft and at the specific time

of the bird strike.  Plaintiffs' own retained wildlife biology and wildlife management

expert could not say that a wildlife hazard assessment of Wiley Post prior to March

of 2008 would have prevented the airplane crash.  Doc. No. 130, Exhibit K at p. 211,

lines 13-20.  Plaintiffs' expert further testified:

Q. [D]o you know of any way to keep an American white pelican, a migrating

American white pelican, from traveling to the vicinity of Lake Overholser?

A.  No, there would always be a possibility one bird could fly over Lake

Overholser.

Q.  Or a constellation of birds, correct?

A.  Yeah.

Exhibit K, p. 130, lines 1-7.

It is undisputed that an Airport Facility Directory ("A/FD") provides pilots with

comprehensive information on airports, including hazards at or around an airport of

a native or fixed nature.   It is likewise undisputed that a Notice to Airmen

("NOTAM") is a special alert to inform pilots of a more immediate or short term and

temporary hazards at a specific location.  Pilots are required to inform themselves of

the information set forth in both the A/FD and NOTAMs.  There is no evidence that

at the relevant time period surrounding the fatal crash, the defendants were

informed or had any knowledge whatsoever of an American white pelican or

pelicans flying in the area.  It is undisputed that on the date of the airplane crash,

22

defendants' A/FD contained the statement "Flocks of birds on and invof  arpt, all quadrants," meaning, flocks of birds on and in the vicinity of the airport, all quadrants.  Plaintiffs have not shown any American white pelican activity on the date of the crash that would have required the issuance of a NOTAM regarding the specific bird or birds involved in the crash.  It is undisputed that, other than the March 4, 2008 bird strike, there was no history of any reported strikes with American white pelicans either at Wiley Post or Will Rogers World Airport, or even within the State of Oklahoma.  Defendants' Statement of Undisputed Facts, ¶ 27.  In light of the undisputed facts, plaintiffs' claim that defendants' warnings were improperly worded or somehow inadequate are purely speculative and conjectural.  Further, even if the court were to assume for the sake of argument that defendants' warning was inadequate, it is entirely speculative that the form of warning proposed by plaintiffs, if given, would have prevented the bird strike from occurring on March 4, 2008.

Because plaintiffs have failed to establish proximate causation as a matter of law, the court need not consider whether the other essential elements of a negligence claim have been met, including whether defendants owed the plaintiffs a duty of care and whether there was a failure to perform that duty.  Even if the court were to find that defendants had a duty to implement a wildlife mitigation program at Wiley Post, and if defendants were found to have breached that duty, it remains that any alleged acts or omissions by defendants are not the proximate cause of the

injuries sustained by plaintiffs' decedents.  There is no evidence from which the jury could find a causal connection between a negligent act by defendants and the resulting injuries.  Accordingly, summary judgment is appropriate.

Therefore, Oklahoma City Airport Trust's and the City of Oklahoma City's Motion for Summary Judgment **[Doc. No. 130]** is **GRANTED.**  In light of this order, the court need not consider Plaintiffs' Motion for Partial Summary Judgment and Second Motion in Limine regarding OCAT's non-delegable duty **[Doc. No. 125]**, and this motion is deemed **MOOT.**  Judgment will issue on a separate document in accordance with the Federal Rules of Civil Procedure.

It is so ordered this 8th day of February, 2013.

_____
TIM LEONARD
United States District Judge